F I L E D
CLERK, U.S. DISTRICT COURT
2/21/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___TV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ZEPEI WU,<br>　aka "Arturo,"<br>MANUEL BOLANOS-AYONA,<br>　aka "Carlos,"<br>MIRIAM WU, and<br>LI CHEN LEE,<br><br>　　　　Defendants. | No. 2:24-cr-00115-DOC<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Distribute Heroin, Methamphetamine, and Cocaine; 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II): Possession with Intent to Distribute Cocaine; 18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. § 1956(a)(3)(B): Money Laundering; 18 U.S.C. § 371: Conspiracy to Operate an Unlicensed Money Remitting Business; 18 U.S.C. §§ 1960(a),(b)(1)(B),(C): Operating an Unlicensed Money Remitting Business; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), 18 U.S.C. § 982, 21 U.S.C. § 853: Criminal Forfeiture] |

　　　The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

[DEFENDANTS ZEPEI WU and BOLANOS]

A.   OBJECTS OF THE CONSPIRACY

Beginning in or about December 2015, and continuing until in or about February 2024, in Los Angeles and Riverside Counties, within the Central District of California, and elsewhere, defendants ZEPEI WU, also known as ("aka") "Arturo," and MANUEL BOLANOS-AYONA, aka "Carlos" and others known to the Grand Jury, conspired with one another to knowingly and intentionally distribute at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, at least five kilograms of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance, and at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(i),(ii), (viii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in substance, as follows:

1.   Defendants ZEPEI WU and BOLANOS would find customers for heroin, cocaine, methamphetamine, and other controlled substances.

2.   Defendants ZEPEI WU and BOLANOS would arrange to obtain the amount needed to supply the controlled substances for sale to customers.

3.      Defendants ZEPEI WU and BOLANOS would instruct customers as to the price of the controlled substances and arrange the time and place for an exchange of the drugs for money.

4.      Defendants ZEPEI WU and BOLANOS would charge a commission based upon the price of the controlled substances as their fee.

5.      Defendant ZEPEI WU would offer to launder drug trafficking proceeds for a fee as an additional incentive to conduct drug business with him.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its objects, defendants ZEPEI WU and BOLANOS, and co-conspirators known to the Grand Jury, committed the following overt acts, among others, within the Central District of California, and elsewhere:

1.      On December 3, 2015, in Alhambra, California, defendants ZEPEI WU and BOLANOS met with a confidential source of information posing as a drug trafficker and money launderer ("CS-1") and told CS-1 that they wished to purchase large quantities of controlled substances for shipment to Australia.

2.      On February 18, 2016, in Ontario, California, defendants ZEPEI WU and BOLANOS met with CS-1 and an undercover law enforcement agent posing as a major drug trafficker with ties to Australia ("UC-1") to discuss future business to purchase drugs, ship them to Australia, and launder the proceeds of sale of those drugs.

3.      On March 17, 2016, in Ontario, California, during a conversation, defendants ZEPEI WU and BOLANOS asked CS-1 and UC-1 for a sample of cocaine that CS-1 and UC-1 could supply to defendants ZEPEI WU and BOLANOS.

3

    4.    On March 17, 2016, in Ontario, California, during a conversation, defendants ZEPEI WU and BOLANOS received a 0.5 gram sample of cocaine from CS-1 and UC-1.

    5.    On January 12, 2017, in Chula Vista, California, during a meeting, defendants ZEPEI WU and BOLANOS sold approximately 424.3 grams of methamphetamine ("ice"), to CS-1 and UC-1 in exchange for $1,600.

    6.    On July 19, 2018, in Ontario, California, during a meeting, defendants ZEPEI WU and BOLANOS sold one kilogram of heroin to CS-1 and an individual they believed to be a drug trafficking associate of UC-1, but who was, in fact, an undercover law enforcement agent ("UC-2") in exchange for $32,000.

    7.    On September 18, 2018, in Murietta, California, defendant BOLANOS and others known to the Grand Jury possessed with intent to distribute approximately 15 kilograms of heroin that he intended to sell to CS-1 and UC-2.

    8.    On February 26, 2019, in San Gabriel, California, during a meeting, defendant ZEPEI WU told UC-2 that he had two customers who wanted to purchase 100-300 kilograms of cocaine and asked UC-2 what price UC-2 would charge per kilogram for a purchase of that amount.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(II)]

[DEFENDANT ZEPEI WU]

On or about August 26, 2020, in Riverside, California, within the Central District of California, defendant ZEPEI WU, also known as "Arturo," knowingly possessed with intent to distribute at least 500 grams, that is, approximately five kilograms, of a mixture and substance containing a detectable amount of cocaine, a Schedule II narcotic drug controlled substance.

COUNT THREE

[18 U.S.C. § 1956(h)]

[ALL DEFENDANTS]

A.  OBJECT OF THE CONSPIRACY

Beginning in or about December 2015 and continuing through February 26, 2019, in Los Angeles County, within the Central District of California and elsewhere, defendants ZEPEI WU, aka "Arturo," MANUEL BOLANOS-AYONA, aka "Carlos," MIRIAM WU, and LI CHIN LEE, and others known and unknown to the Grand Jury, conspired and agreed with each other to commit an offense against the United States, namely:

To conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce involving property believed to be the proceeds of specified unlawful activity punishable under the laws of the United States, that is, the felony distribution and possession with intent to distribute controlled substances, with the intent to conceal and disguise the nature, the source, the location, and the ownership of that property in violation of Title 18, United States Code, Section 1956(a)(1)(B)(1).

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.  Defendants ZEPEI WU and BOLANOS would find customers engaged in drug distribution who needed money laundering services in order to disguise the source of their drug distribution proceeds.

2.  Defendants ZEPEI WU and MIRIAM WU would accept large sums of United States currency that they believed to be the proceeds of drug trafficking.

3.     Defendants ZEPEI WU and MIRIAM WU would confirm the amount of the drug proceeds by counting and repackaging the United States currency.

4.     Defendants ZEPEI WU, BOLANOS, and MIRIAM WU and would deliver the drug proceeds to defendant LEE for further counting and processing.

5.     Defendant LEE would count, wrap, and deposit the drug proceeds into a bank account.

6.     Defendant LEE would arrange to have the drug proceeds wire transferred into a bank account held by the owner of those proceeds and would receive a fee for this service.

C.    OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants ZEPEI WU, BOLANOS, MIRIAM WU, and LEE committed the following overt acts, among others, within the Central District of California and elsewhere:

1.     On December 3, 2015, in Alhambra, California, defendants ZEPEI WU and BOLANOS met with an individual they believed to be a supplier of large amounts of controlled substances, but who was in reality a confidential source of information for law enforcement ("CS-1") and offered to launder money for CS-1.

2.     On February 18, 2016, in Ontario, California, defendants ZEPEI WU and BOLANOS met with CS-1 and an individual they believed to be an associate of CS-1 who could supply large quantities of controlled substances and ship them to Australia, but who was in reality a law enforcement officer acting in an undercover capacity ("UC-1"), and again offered to launder drug proceeds for CS-1 and UC-1 in amounts as high as $500,000 at a time.

7

3. On March 17, 2016, in Ontario, California, defendants ZEPEI WU and BOLANOS met with CS-1 and UC-1 to receive a sample of cocaine from UC-1, and offered to launder drug proceeds of up to $500,000 per day for a fee of three percent of the amount and make it available in Mexico within one hour of receiving the drug proceeds in the United States.

4. On May 19, 2016, in Los Angeles, California, defendant ZEPEI WU met with an unidentified coconspirator and received seven boxes that were placed in the rear of his vehicle.

5. On May 19, 2016, in Alhambra, California, defendant ZEPEI WU drove his vehicle to a parking lot where defendant ZEPEI WU gave three boxes containing approximately $285,830 in drug proceeds to a coconspirator known to the Grand Jury.

6. On July 6, 2016, in Ontario, California, in a meeting, defendants ZEPEI WU and BOLANOS agreed to launder $100,000 in United States currency for CS-1 and UC-1 for a fee of three percent.

7. On September 29, 2016, in Alhambra, California, defendant ZEPEI WU transported approximately $419,967 of drug proceeds in the form of United States currency.

8. On August 22, 2017, in New York, New York, in a meeting, defendants ZEPEI WU, BOLANOS, and MIRIAM WU explained how they laundered drug proceeds to CS-1 and an individual they believed to be a drug trafficking associate of UC-1, but who was, in fact, an undercover law enforcement agent taking the place of UC-1 ("UC-2").

9. On September 12, 2017, in Monterey Park, California, in a meeting, defendants BOLANOS and MIRIAM WU accepted $100,000 in United States currency from CS-1 and UC-2 to launder and return to UC-1 in exchange for a fee of $10,000.

10. On September 12, 2017, in Monterey Park, California, during a meeting, defendants BOLANOS and MIRIAM WU delivered the $100,000 in United States currency to defendant LEE inside her business, A1 Express.

11. On September 12, 2017, in Monterey Park, California, defendant LEE notified CS-1 and UC-2 via text message that the $100,000 had been wire transferred into the undercover bank account.

12. On October 10, 2017, in Ontario, California, defendants ZEPEI WU, BOLANOS, and MIRIAM WU agreed to transport $200,000 in United States currency that UC-2 and CS-1 represented to be the proceeds of heroin sales, from Boston, Massachusetts to the Los Angeles area for a fee of eight percent.

13. On October 23, 2017, defendant BOLANOS sent two text messages to CS-1, providing the serial number of a dollar bill (as verification of the identity of the person in Boston who was to pick up the $200,000 in United States currency that had been represented to be the proceeds of heroin sales), and the name "Lisa" and telephone number of the contact.

14. On October 24, 2017, in Alhambra, California, defendants ZEPEI WU and BOLANOS met with CS-1 to deliver the $200,000 in United States currency represented to be the proceeds of heroin sales that had been picked up in Boston, Massachusetts.

15. On October 25, 2017, in Alhambra, California, defendant ZEPEI WU took CS-1's car keys, met with an unknown co-conspirator and received a bag containing $200,000 in United States currency, placed the bag in CS-1's vehicle, and returned the keys to CS-1.

16. On February 22, 2018, in Monterey Park, California, during a meeting, defendants ZEPEI WU, BOLANOS, MIRIAM WU, and LEE received

$200,000 in United States currency represented by UC-2 to be the proceeds of drug sales, to be laundered, and $20,000 in United States currency as a ten percent fee, from CS-1 and UC-2.

17. On February 22, 2018, in Monterey Park, California, defendant LEE used an electronic money counter at her business, A1 Express, to verify the amount delivered by CS-1 and UC-2.

18. On February 22, 2018, in El Monte, California, defendant LEE delivered the $220,000 in purported drug proceeds to a branch of Chase Bank.

19. On February 22, 2018, in Monterey Park, California, defendant LEE returned to her business, A1 Express, and delivered the wire transfer confirmation for $200,000 to CS-1 and UC-2.

20. On May 3, 2018, in Monterey Park, California, during a meeting, defendants ZEPEI WU, BOLANOS, MIRIAM WU, and LEE received $200,000 in United States currency represented by UC-2 to be the proceeds of drug sales, to be laundered, and $20,000 in United States currency as a ten percent fee, from UC-2 and CS-1.

21. On May 3, 2018, in Monterey Park, California, defendant LEE delivered the $220,000 in purported drug proceeds to a branch of Chase Bank.

22. On May 3, 2018, in Monterey Park, California, defendant LEE delivered a wire transfer receipt for $200,000 to UC-2 and CS-1.

23. On June 13, 2018, in Monterey Park, California, during a meeting, defendants ZEPEI WU and LEE received $200,000 in United States currency represented by UC-2 to be the proceeds of drug sales, to be laundered, and $20,000 in United States currency as a ten percent fee, from UC-2 and CS-1.

10

24. On June 13, 2018, in Monterey Park, California, defendant LEE delivered the $220,000 in purported drug proceeds to a branch of Chase Bank.

25. On June 13, 2018, in Monterey Park, California, defendant LEE delivered a wire transfer receipt for $200,000 to UC-2 and CS-1.

26. On February 26, 2019, in San Gabriel, California, defendants ZEPEI WU, LEE, and MIRIAM WU received $212,000 in United States currency that was represented by UC-2, a law enforcement officer, to be the proceeds of drug distribution.

27. On February 26, 2019, in San Gabriel, California, defendant LEE delivered the United States currency that was represented by a law enforcement officer to be the proceeds of drug distribution to two coconspirators known to the Grand Jury.

28. On February 26, 2019, in San Gabriel, California, defendant MIRIAM WU showed UC-2 two bank wire transfer receipts for $170,000 and $30,000 that defendant MIRIAM WU received from defendant LEE after UC-2 delivered the $200,000 in U.S. currency for laundering.

COUNT FOUR

[18 U.S.C. §§ 1956(a)(3)(B), 2(a)]

[DEFENDANTS ZEPEI WU, MIRIAM WU, AND LEE]

On or about February 26, 2019, in Los Angeles County, within the Central District of California, defendants ZEPEI WU, also known as "Arturo," MIRIAM WU, and LI CHIN LEE, each knowingly and intentionally aiding and abetting the other, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of specified unlawful activity, knowingly conducted a financial transaction affecting interstate and foreign commerce involving property represented by a law enforcement officer to be proceeds of specified unlawful activity, that is, the felony distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT FIVE

[18 U.S.C. § 371]

[DEFENDANTS ZEPEI WU, MIRIAM WU, AND LEE]

A. <u>OBJECT OF THE CONSPIRACY</u>

Beginning on a date unknown, but no later than December 2015, and continuing to in or about February 2019, in Los Angeles, Riverside, and San Bernardino Counties, within the Central District of California, and elsewhere, defendants ZEPEI WU, MIRIAM WU, and LI CHIN LEE, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally conduct, control, manage, supervise, direct, and own an unlicensed money transmitting business affecting interstate and foreign commerce, which failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations thereunder, and involved the transportation and transmission of funds known to have been derived from criminal offenses and intended to be used to promote and support unlawful activity, all in violation of Title 18, United States Code, Sections 1960(a) and 1960(b)(1)(B) and (C).

B. <u>MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED</u>

The object of the conspiracy was to be accomplished, in substance, as follows:

The object of the conspiracy was to be accomplished, in substance, by the Means alleged in Count Three, Section B of this Indictment, which are re-alleged here.

C.   OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants ZEPEI WU, MIRIAM WU, and LEE committed the following overt acts, among others, within the Central District of California, and elsewhere:

The Overt Acts 1 through 28 alleged in Count Three, Section C of this Indictment are re-alleged here.

COUNT SIX

[18 U.S.C. §§ 1960(a), (b)(1)(B), (C), 2(a)]

[DEFENDANTS ZEPEI WU, MIRIAM WU, AND LEE]

On or about February 26, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants ZEPEI WU, aka "Arturo," MIRIAM WU, and LI CHIN LEE, and others known and unknown to the Grand Jury, each knowingly and intentionally aiding and abetting the other, knowingly conducted, controlled, managed, supervised, directed, and owned an unlicensed money transmitting business affecting interstate and foreign commerce that: (1) failed to comply with the money transmitting business registration requirements under Section 5330 of Title 31, United States Code, and the regulations prescribed thereunder; and (2) involved the transportation and transmission of funds that were known to defendants ZEPEI WU, MIRIAM WU, and LEE to have been derived from a criminal offense and were intended to be used to promote and support unlawful activity.

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in Count One of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) All right, title and interest in any and all property, real or personal, constituting or derived from, any proceeds which said defendant obtained, directly or indirectly, from such offense;

   (b) All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and

   (c) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3. Pursuant to Title 21, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in either of Counts Two or Four of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

   (a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

17

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000 or more in any twelve-month period.

FORFEITURE ALLEGATION THREE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C); Title 28, United States Code, Section 2461(c), and Title 18, United States Code, Section 982(a)(1) in the event of any defendant's conviction of the offense set forth in Count Three of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

    (a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

    (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

        /s/
Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, and
Racketeering Section

BRITTNEY M. HARRIS
Assistant United States Attorney
Deputy Chief, International
Narcotics, Money Laundering, and
Racketeering Section

JULIE J. SHEMITZ
Assistant United States Attorney
International Narcotics, Money
Laundering, and Racketeering
Section